Your Honor, this case is going to call 2-12-10-26, James Day v. Crystal Lake Apartments. On behalf of the F1, Mr. Mark J. Vogt. On behalf of the F1, Mr. Edward F. Thompson. Thank you, Mr. Vogt. You may proceed. May it please the court, counsel, good morning. My name is Mark Vogt. I'm here on behalf of the plaintiff, James Day. As you know, we're here today appealing Judge Meyer's granting of the defendant's 2-6-1-5 motion to dismiss. We are here asking this court to reverse that dismissal. Mr. Vogt, let me ask you briefly, did the court ever address the 2-6-19 motions? In its final ruling, the court did not. There were numerous motions to dismiss, combined motions, both 2-6-1-9 and 2-6-1-5. In the final motion that was filed, defense counsel raised, in addition to other issues that had been raised earlier, for the first time, the open and obvious defense. At that point, Judge Meyer, having been well aware and familiar with all the pleadings, essentially told counsel that I am going to rule on the 2-6-1-5 motion. I will not accept any evidence or argument on the other aspects of the motion. And therefore, we proceeded to a hearing solely on the Rule 2-6-1-5 motion, which involved whether or not the plaintiff could properly plead a cause of action for willful and wanton conduct. Were you given the opportunity to file responsive pleadings to the open and obvious issue? We were not. We were not allowed to prepare or present any evidence. And to the credit of defense counsel, I believe he acknowledged in his brief that there was no argument or evidence allowed on that open and obvious issue. All right. Thank you, sir. We affirmed a dismissal in the Ledger case in the same court, same judge. What's the difference between this case and that case? Well, quite frankly, I think Ledger is directly on point and directly helpful. In Ledger, as the court knows, a high school student was injured in her school gymnasium when a volleyball net crank hit her in the face. And the court held that to establish willful and wanton conduct, the plaintiff must allege the defendant had knowledge of the risk of injury by a condition on the defendant's property. And here's the most important part of that opinion and what, quite frankly, distinguishes that opinion or actually makes that opinion important in this case. The court said, and this is a quote, at oral argument, plaintiff acknowledged that she had not alleged that defendant was aware of prior injuries caused by the crank, which would have put defendant on notice of such a risk. The Ledger court, consistent with longstanding case law, held knowledge of a prior injury caused by a condition on the defendant's recreational property gives rise to willful and wanton conduct. In this case, the complaint absolutely alleges the defendant was aware of a prior similar injury caused by the hill and the fencing system. Is that really the essence as I'm looking at the briefs and the arguments? You're distinguishing this, in opposing counsel's sense, a number of cases, but one of the critical distinguishing factors is the knowledge of the prior similar injury, correct? In my opinion, that is the most important factor in this case. That is the fact that distinguishes this case from essentially all of the cases relied upon by the defendant, that the defendant in this case, according to the pleadings, which as we know must be accepted as true, was aware of essentially the exact same injury. We have alleged a hill that was dangerous and defective and a fencing system that was dangerous and defective, and that the defendant had replaced a safer fencing system with the one that was used. After they replaced the flexible fencing system, a minor child, we identified him by name Luke, I think Herzog was his name, was going down the hill, unexpectedly veered into this wooden rigid fencing system and was injured. His father complained to the park district and the park district did nothing. I think the case law holds that once they have notice of that prior injury and they do nothing, then that is a course of action that shows an utter indifference to the safety of the plaintiff and others, and that's the distinguishing factor in this case. Were there some warning signs there? There were some warning signs there, right, of some type or kind? There were also other warning signs in the sense that we've alleged that the wooden fence was repeatedly struck, was repeatedly hit, and repeatedly broken. So they knew people were slamming into this wooden fence. Now, again, there are some cases that say just because you know that happened, if it wasn't for the fact that somebody was actually injured by this fencing system, they may have a better argument. I don't think that's the end of it because, again, they removed a safer alternative, which I'm going to talk about, the Benhart v. Rockford Park District case in a minute. But, again, they knew people were striking this fence. They knew that this fencing system injured another minor and they did nothing. The case is whole. That shows an utter indifference to the safety of the plaintiff. And, again, we're just talking about plea. We are only asking that this court make the defendant defend itself, make the defendant go through discovery and allow us, through depositions, through other discovery to prove our case, which, again, we have alleged in the complaint. Other people striking the fence without injury would actually show that the fence is working, keeping people out of the culvert and away from that concrete pipe that was there. Would you agree with that? If there was no prior injury, that really there would be no notice of any defective condition? Well, I would agree that as far as other people striking the fence without notice of an actual injury, I don't necessarily agree that that shows it's not defective. Again, they knowingly replaced a flexible fencing system with a hard, rigid fencing system. I think under the Benhart case where, as the court knows, they removed non-slip strips from the pool surface. And the court there held, and the defendants kind of argued the same thing that I think the court may be getting at. The defendants argued basically that, look, we tried to make the pool safer. And the court said, we note that defendants contend the presence of non-slip strips actually may be a hazard in the wave pool. While riding a wave, a body surfer may slide along the bottom of the pool and say they could get injured on the pool. Thus, defendants maintain that removing the non-slip strips may actually increase the safety of the wave pool. And importantly, the court said, these are issues for the trier of fact to decide. Here we have a flexible fencing system. They replaced that with a wooden, hard fencing system that did cause injury. And they knew about that. And a question of fact, therefore, arises as to whether or not that demonstrates willful and wanton conduct. Now, the case law says it's usually a question of fact, but there's also a case law that says the court could determine whether the allegations are sufficient, correct? That's correct. Vague allegations of prior notice, vague allegations of prior injuries, the courts have routinely said those are not sufficient. And I would agree with that 100%. That is not the case here. We have an allegation that the injury that occurred to James Day happened in the same manner, the same fashion, and by the same mechanism, meaning the hill that improperly funneled James Day into this rigid fencing system. All of that happened once before. The Park District did nothing. The Park District should have to defend this case. How long was the fence up, the hard fence? The fence had been up for, I believe, approximately eight years, if I remember. I don't remember the exact date. We have it in our complaint in the facts. I think it was 2003 or something. And then this other injury was in 09, something like that? Correct. I don't know if there's any case law out there that says one prior notice of one injury after the fence being up for that length of time is enough to show willful and wanton. Well, again, I believe all of the case law says once they know that their recreational property causes injury that they have a duty to do something. I believe the legislature, in passing immunity, they told the Park District, they told every municipality, you can put all the fences up you want. You can put them where you want, how you want them. And if for some reason you do that negligently, we are going to give you immunity for that. They also said that if you acted in a willful or wanton manner, though, you're going to have to come into court and defend yourself. And they define what willful and wanton is. And the courts have interpreted that to mean if you have notice of a prior injury, then that establishes a course of action that shows an utter indifference to the safety of others. And I'm not aware of any case that says, you know, there has to be a particular time period before within the subsequent action. Time period or a specific number of prior incidents is correct, you're saying? Correct. Wasn't there no fence from 2000 to 2003? And then in 2003, they put the plastic fence and I think in the same year they replaced it with bone. That is correct. The hard fence. So then there were repeated collisions which required repairs to this fence, correct? That's correct. What happened was they put up the plastic fence and it was more expensive to replace the plastic fencing. So they made a decision to put up this rigid wooden fencing system. And I think when the evidence is all brought forth, hopefully it will, then the evidence will show this was just a decision they made and that a jury needs to decide whether they acted unreasonably given the knowledge that they had that people were striking this fence and that somebody else had been injured by this fence. The trial court in its ruling indicated that their ruling was based on, and I think at some point he said, as a matter of public policy. Did he expand on that or can you shed any light on what he meant by that? Judge Meyer, with all due respect, I don't believe Judge Meyer should be setting policy in this state. He, in his heart of hearts, felt that he said it on several occasions. He felt this was just a fence acting as a fence. And I don't know how we can have liability for that. Well, first of all, with all due respect to Judge Meyer, I believe the complaint alleges something much more broad than that. Again, we have a hill that suddenly and unexpectedly veers sweaters at a sharp angle over into this fence, and we have a fence that's hard, rigid with hidden posts that replace the more flexible fencing system. But regardless of all that, I believe that Judge Meyer's rationale is wrong, that the Supreme Court in the Ward case clearly stated that ordinary items can give rise to a cause of action. And the quote that I think is very, very significant, it said, we agree with the defendant and the trial court that there is nothing inherently dangerous about the post. It is just an ordinary post. But there also may be conditions which, though seemingly innocuous enough in themselves, indeed present an unreasonable danger under certain circumstances. In our case, we have pled such circumstances. We have pled a dangerous hill that veers sweaters into a rigid fencing system. We have pled that that rigid fencing system replace a flexible fencing system in knowledge of a prior similar injury caused by the hill and fencing system. Just as an ordinary post can be actionable, so can a seemingly ordinary fence be actionable under the appropriate circumstances. And given the facts we've pled, I think we have pled those circumstances. I'm trying to find what case it is because off the top of my head, I can't remember. The football case, but there were posts in the football case. The court found that there was no willful and wanton conduct in the school district. How is this any different? In that case, they specifically held that... It's Bialeck versus Marine Valley Community College. And, again, that's a great case, Your Honor. And, again, the distinguishing factor in that case is lack of notice of a prior injury. This is a quote from that court. The evidence in this case does not satisfy the standards as synthesized by... They cite Dunn-Virg versus Latting Court. Marine had no notice of prior injuries which occurred as a result of the goal post structure. So, again, that is consistent with Blasio. That is consistent with Benhart. That is consistent with Thurman. Every case that either party has cited where they talk about notice of a prior injury gives rise to willful and wanton conduct. And, again, we're just at the pleading stage here. We have pled that. We have pled that this fencing system was dangerous, this hill was dangerous, and that it caused injury that they knew about. I think, again, as I stated, the case is pretty clear that once we plead the prior notice that they have an obligation to do something, or, more importantly, that gets us past the pleading stage and they should now defend this case. And are you asking us to address the 2619 or not to address the 2619? I am asking the court not to address that. I do not believe that the plaintiff was given an opportunity to fully respond and to fully present evidence on those issues. Is there anything precluding, then, the defense from going back before the trial court and renewing that 219, 2619? No. I mean, for what it's worth, if you look at, I think, the First Amendment complaint, Judge Meyer, and this was before they raised the open and obvious issue, Judge Meyer actually denied, without prejudice, the initial 2619 motion to dismiss. Then we filed a Second Amendment complaint. They filed their motion to dismiss that included open and obvious. We filed a Third Amendment complaint. Everything was held applicable to that, and that's when we only addressed the 2615. So I certainly think they have a right to renew that. But, again, at that point, I believe Judge Meyer will allow us to get affidavits, discovery, that will certainly defeat that. And, quite frankly, even the limited amount of information we have in the file, as I pointed out in the plaintiff's brief, I think does raise questions of fact on those issues. That Janke affidavit only addressed the 2615, correct? Well, that's correct. I think they may be using it on other purposes, too, but he did address the 2615. But, again, the allegations of the complaint, I think, taken as true, do establish a course of action that showed an utter indifference to the safety of James Day, and, therefore, I would ask that he reverse the dismissal by Judge Meyer. Thank you. Thank you, Mr. Bowles. We will have time for rebuttal. Mr. Dutton, you may proceed. It's chilly in here. It is. It feels nice. Good morning. If it pleases the Court, Mr. Bowles, my name is Ed Dutton. I'm with the Park District, and I came with a whole bunch of notes, and what I'm going to do is set those aside. You're not going to get through them. I'm not going to get through them, and I do this every time because I'm typically the appellee, and then I come up with, this time I even typed them out myself, and I come with my prepared thoughts. I'm going to skip that and set it aside. I might get back there in a minute, but here's what I want to talk about. First, I'd like to clear up and clarify the issue on the 2615-2619, and what's probably before the Court here. In the trial court, I filed two separate motions to dismiss with regard to what was the second medical complaint, and then the parties agreed to adopt those as the third medical complaint because the allegations did not change significantly. One of those motions to dismiss was brought pursuant to 2619.1, and it had two different parts to it. One was that the offense itself was an open and obvious condition. For that, I relied on the photographs and affidavit testimony of Dennis Jockey. The second part of that motion was brought pursuant to 3102 and got into the issue of whether the plaintiff was intended and permitted to run into the fence. That motion, the trial court, at the suggestion of plaintiff's counsel, set aside, over my objection, and said we're not going to hear that motion right now. So plaintiff's counsel says let's not address the open and obvious issue in the trial court. The trial court agrees. I have it on file. That's where that motion sat. Plaintiff's counsel is correct that we did not address the open and obvious motion because plaintiff's counsel requested in the trial court order that we would not address it, so we set it aside and stated it. The other motion, which also has a 2619 component to it, was combined. It was a 2615-2619. I was very careful to segregate. I did it properly. I followed it. I've been before this court before in Floyd v. Rockford. It's the same type of motion. The 2615 aspect of the motion argued that based upon four corners of the complaint, the plaintiff's allegations were insufficient to state a cause of action for willful and want conduct. What strikes me as frustrating and actually odd in this case is in the trial court, with regard to that 2615 motion, the plaintiff in his response, plaintiff's counsel, attempted to bring in, in fact brought in before the trial court, the deposition testimony of Dennis Jahnke in the response on the 2615 portion, which is clearly improper, and I raised that. It's absolutely all through the record. I raised that and said, trial judge, respectfully, we all have to stick within the four corners of what plaintiff has alleged on the 2615 motion within the complaint.  That was a 2619 portion, which essentially raised the same arguments that the allegations and the evidence were not sufficient to establish willful and want conduct, and that was absolutely fully briefed and argued, so much so that plaintiff's counsel deposed Dennis Jahnke and then placed his trial or placed his affidavit testimony before the trial court, and plaintiff's counsel also placed separate evidence in the form of some sworn statement from some guy named Herzog about a prior dissimilar occurrence. We'll get to that in a bit. That was all before the trial court. It was argued, it was briefed, and it was considered by the trial court. Ultimately, what the trial court ruled in Justice Shostak, this goes exactly to your question. Your question was, did the trial court ever address the 2619 motion? Yes. That part of the 2619 motion, which was based upon the affidavit testimony of Dennis Jahnke and his deposition testimony, was absolutely addressed. It is all through the trial court record and the report of proceedings, and, in fact, the trial judge references it at several points. I highlighted that in my brief, talking about things like the fence was put in because there were culverts down there and because there had been a 2003 accident. That all comes from Dennis Jahnke's affidavit and deposition testimony. That was absolutely considered by the trial court. So when plaintiff's counsel said, no, we only proceeded here in the 2615, that isn't accurate. The trial judge ruled on the basis that the allegations were not sufficient, never made a ruling on the separate 2619 motion with regard to willful and wanton conduct, but it doesn't mean that it wasn't addressed. It's simply that the trial court was silent on that. Fast forward, what does this court get to consider? Well, as I pointed out in my brief, a couple of things. First of all, the well-centered rule of appellate procedure is the appellate court can consider any basis in the record that would support dismissal as long as it was of record and here especially where it was addressed by the parties before the trial court. That's number one. So that's just the basic rule. It would support dismissal. Therefore, that 2619 portion when we talk about deposition testimony was properly before the trial court. Was open and obvious part of that? Open and obvious was not part of that motion. Open and obvious was absolutely raised before the trial court in my motion. Your first one. Exactly. And then the plaintiff actually made allegations with regard to distraction in his complaint. They weren't well supported, but we addressed that issue before the trial court. The trial court, however, set that motion aside and simply ruled on the 2619. What I'm getting at is that at least on the open and obvious part, the plaintiff hasn't had an opportunity to fully brief that, correct? Absolutely true, Your Honor. Absolutely true. And frankly, as far as I'm concerned, the open and obvious, we can argue it or not. I really don't care. It's actually properly before the court that I am serious about. The main reason I raised it is because the Park District has, one of the plaintiff's allegations is that we failed to warn of the presence of the fence or that the fence was a breakaway. And I said, warn of the fence? Your own allegations say it's 100 feet long and it's at the edge of the sledding area. What do we need to warn of? And the trial judge picked up on that in his ruling and said it's a fence acting as a fence. I looked at the reverse. If that fence were a breakaway or break free, if it were penetrable, according to the plaintiff's allegations and argument, that's something you'd want to warn about. Hey, by the way, this fence is completely inadequate. If you run into it, it's going to blow apart. Wasn't one of the allegations, though, in their complaint is not so much the fence as the way that the hill was graded or the hill kind of swerved towards the fence. So maybe it was the slope of the hill as opposed to only the fence. Yes, and I also touched on that, Your Honor, both in the briefing and the trial court. One, there's no allegations of fact to support that, but let's go with just that theory that somehow we should have sloped it or graded it somehow. I pointed out the only two options I can think of. I think the plaintiff said at some point, I'm not sure if it's in the complaint, but I know it was argued before the trial court, they should have put a berm up. Should have put a berm up. Yeah, that'd be great. And, of course, I argued back, yeah, that's a great idea. And guess what we're going to have? We are going to have a launch ramp because that's what a berm is on the side of the sled hill. Think a launching ramp. It's like a half pipe. That'd be fun. It would be fun. Think of Shaun White. Other than landing on the pipe, right? Other than landing, when you go up, hey, it's great. When you come down and they end up on the cement culvert. And I said, okay, two things are going to happen here. Either the berm is going to simply act, depending on what angle you put it. If you put it at a right angle, you've now got a dirt field, very solid wall at the edge of the thing. So that's not going to work. According to the plaintiff's theory, worse than what we've got there now. So if you slope it, all you've got is a ramp that sends people off. The park district absolutely, when you talk about discretionary immunity, the park district absolutely had to weigh alternatives. And the alternative with putting in a berm, which would be a launch ramp, into the area that they don't let the kids go into, would be an actually horrible idea. It would make the fence completely ineffectual. In fact, the fence would come out of whack. You'd simply launch people up into the culverts. So the reason I raised the open and obvious is because the plaintiff said, you should have warned us that the fence was there. I said, warn you? It's open and obvious. It's 100 feet long. You're saying that's not the critical issue as far as you're concerned. Not as far as I'm concerned, and according to the court, apparently not what the court's concerned with either, and I'm fine with that. Just the plaintiff's argument appears to be that merely the fact that there is an injury occurring with a fence set up by the park district would not in and of itself be woeful and violent. Their response is, well, wait a minute. We have alleged notice of prior injuries at this fence. That takes us away from many of the cases you have cited, you're saying, where there was no allegation of a prior injury involving the instrumentality. So why isn't that sufficient to get it to a jury? Sure. A whole bunch of reasons. Actually, the open and obvious case law does weigh in there. Let me start with Buccellaris, because Buccellaris is the leading open and obvious case law from the Supreme Court, and in there, the allegations of evidence were, because it actually was up on summary judgment, the allegations of evidence were that there had been multiple prior injuries by jumping off the C law. Why did the liability result there? The reason why, you have to have a defective or dangerous condition first. That's where plaintiff's counsel was arguing with me in the trial court and in my brief on appeal, where I had said, and I think I said it, I'm quoting myself in the trial court, I don't care if you had 100 prior injuries, it doesn't matter to me if there's no defective condition. Do you think the plaintiff and Buccellaris got past the 615 motion, though? I mean, that was on summary judgment. I don't know if they brought it to the 615 motion, actually. I don't know if they brought it to 615. Well, I don't know if they brought my appeal that way. They probably would have been dumb not to, but, you know, I'm just saying, that was on summary judgment. We keep bleeding into the facts here, which I understand. You said that you had the 619 kind of tag along with this, but really, I mean, our first focus has to be on the 615. Sure, sure. And the four corners of it. And in Buccellaris, I mean, if you had said, jump it off the seawall, and this happened a bunch of other times, that might be enough, based on that notice, to get you past the 615. Then you move on to summary judgment and open and obvious all those. Here's why it was important to me, Your Honor. And it was pretty important. It was pretty important. Buccellaris said, even though you had evidence, not just allegations, but evidence of multiple prior injuries jumping off that same seawall, because there was not a defective condition, because the act of jumping off and into the water of unknown depth is an open and obvious danger, it doesn't matter how many prior injuries, no legal duty to warn of or protect against. That's why Buccellaris becomes important. The point is, if you have a prior similar injury, but there's not a defective actionable condition, it doesn't matter. You're saying the fence is not defective, right? I'm saying the fence is not defective. What about this veering off the seawall? The veering off the seawall is a little bit different than going down a hill. The person looking may not know that you're going to veer off if you follow the terrain of the hill. Isn't that subtly a little different than jumping off a third-story building? Sure. You're going to use a dead atlas on this? Sure. You're going to go under the fence? Sure. Here's the example I'm going to use to illustrate this. You've got a fence or railing right in front of this building. I walked past it this morning. It's more solid than the fence or railing in this case. And let's say that yesterday some kid's out there skateboarding on the plaza and runs into the fence. And then today another kid runs into the fence. Is that willful and want conduct or a question of fact and willful and want because two kids skateboarded into a non-defective fence? No. And the reason why, there's nothing defective about the fence, which is why I got back to when I said in the trial court, and I admit it, it wouldn't matter to me if there were 100 people that ran into the fence. The fence is actually serving its purpose. It's keeping people from a more significant danger. You could have a sled hill. People are going to be all over the place. If you know that you have a significant danger beyond that, in fact, a prior injury in 2003 where somebody slid into the covert area, the Park District did a positive thing here. They erected a fence. In fact, they tried multiple different barriers to try to keep people from going into the covert area. Two choices here. Well, three. You could do nothing based upon the 2003 occurrence. And then the next aspect we have where we know we have a hidden danger at the bottom of the hill, which is the covert and drainage area, you can either do nothing and suffer the consequences, which is going to be a question of fact and willful and want, or you can close down the sled hill, in which case we'll have no recreational activities, or you can do what the Park District did, which was to try various measures. And that actually is a critical point here, and I'm going to get back to multiple injuries in a second. It's a critical point here because just like this court found in Callahan, just like the appellate court found in Thurman, just like the appellate court found in Tagliere, and most recently in the Bilema case, if the public can take steps to minimize or avoid the risk or hazard, it can never be willful and want, because willful and want is defined in the Total Immunity Act as a conscious disregard for safety. Well, let's assume there's nothing wrong with the fence. Let's assume for the sake of the argument as it were that everything is fine with the fence. Sure. Is that all this case is about? Or is there something about the hill, the terrain that he's alleging steers them into this fence? And isn't that a part of the mix? It's a part of the mix, but it doesn't make it willful and want. How do we know that? How do we know that? Well, one, just because you have, let's back up here for a second. Let's even assume that there's a defect or danger on public property. That in itself is not willful and want. You have to have at a minimum a defect or danger. Otherwise, you've just got negligence, right? Failure to exercise reasonable care to repair a known danger. And there are comments in the case law, even in willful and want case law, that talks about that. And that's the common law definition. That's not what we're talking about here. That's ziarko. That's the slippery slope. That's the slightly more than negligence, slightly less than intentional. That's not the Total Immunity Act definition. You need much more than mere negligence, which is notice or knowledge of a potential danger or hazard. You have to have that and much, much more. Like, you have to have an identical, similar prior occurrence. That's where I was going to get back to and talk about that. That's what he's alleged, is a similar occurrence. Well, I disagree. Right. In his third and final complaint, he alleged that. But the facts that he had placed before the court, I talked before about, he placed a sworn statement from a guy named Herzog. And when you read through that sworn statement, it's not a similar occurrence. Again, let's go back. No defective condition, but it's not a similar occurrence. His allegation here is he had an inflexible fence and he had steel posts. And the plaintiff, Day, here, ran into the steel posts. That's his case right there. What was that prior occurrence? Well, somebody sledded through the wood slab portion, didn't hit the post, and they actually traveled through because it gave way. What the plaintiff says it should do, it should be penetrable. It gave way, and the kid got scraped up because he went between. Mr. Herzog, in his statement, said he went and reported that, and I quote, to the Village of Crystal Lakes Parks Department, which is not the park district. And the park district has an affidavit on file, which is uncontested, which says we have no notice of any prior similar accident. Herzog's statement that the plaintiff placed before the court is, yeah, there was a prior accident. There was one. The trial judge spent quite a bit of time on that. And that prior accident involved something completely different, not running into a post that didn't give way, but running into the wood section of the fence that did give way and he got scraped up. It's not a prior similar occurrence. And I cited several cases to the court for that, Floyd being one of them. They actually both come out of this court, where we didn't have a prior similar occurrence. My entire point, I'll wrap up right here. From a willful and want standpoint, no case is ever held. There's dict out there. No case is ever held that a prior similar occurrence is enough to create question of fact and willful and want. Because if it were, the fence out in front, the minute a kid walks into it, skateboards into it, falls into it, you would automatically have a case or question of fact and willful and want the next time an injury happens simply because a prior one happened. The problem is the disconnect. You have to first show an actual defect which actually caused that. With the Herzog one, we have no idea why he went into the fence, but it wasn't even the same portion of the fence. He didn't hit what the plaintiff complains of here, which is the metal post. That's why the case law I've cited is absolutely on point. The plaintiff does not have a case going the other way. Thank you very, very much. Mr. Goldberg, model argument, please. Thank you. I'll be very brief. First of all, again, I think the court, based on comments I'm hearing, does recognize that the entirety of the complaint must be viewed here. This is not just an injury by offense. This is a sledding hill that improperly funneled minors into what we believe is a dangerous and defective fence. Now, counsel mentioned about a skateboarder out on the plaza here running into a fence. I don't know all the facts he's going to bring up, but the complaint we've alleged, specifically alleged, is that the park district promoted and encouraged minors to be sledding down this hill. I don't see any signs, you know, skateboard out here. Even then, quite frankly, if there's dangerous conditions on the property out here, which, again, I understand he's just arguing it's not really recreational property, but the point is, you know, the cases uniformly hold notice of a prior injury does create or does get you past the pleading stage. Mr. Dutton stated, you know, the fence acted effectively or was serving its purpose. And in all candor, I would suggest to you that James Day and his mother would disagree. James Day suffered a severe fracture causing surgery with a rod to be placed in his leg and $67,000. I hardly think James Day would argue or agree that that fence served its purpose. And in all due respect, I think a jury needs to decide whether this fence was appropriate and whether this fence served its purpose. What would the option of the park district have been? Would closing this snow hill have been one of the options? Absolutely. Again, those are questions of fact. If there's a sled hill on park district property that is so dangerous that it can't be used without injury, and children are getting hurt and they do nothing, then I think that would be an option. And that's, again, for experts to come in to testify to and a jury to decide. If you had a fence at the bottom of the hill, and I think there's some case law with respect to this, would we be looking at open and obvious differently than we would with a sled hill on the fence on the side of the hill? That's a good question. I'm thinking about it, Your Honor. I guess certainly it depends on some of the facts. If there's a fence, you know, if there's a flat portion and there's a fence 50 yards past the bottom of the hill, and that through some unusual circumstances that, you know, minor plaintiffs don't anticipate, their sleds make it all the way there, that may not be open and obvious. If there's a fence directed at the very bottom where the hill crests or moves over, possibly it could be an open and obvious condition. But again, then you would get into issues of distraction, issues of deliberate encounter exception, and the fact that the park district actively promoted use of this sledding hill. So, again, Your Honor, it's an excellent question. I think additional facts may bear that out, but we don't have the – we haven't had the opportunity in this particular case to go through those facts. And I think as far as – Did you adequately plead notice to the proper entity that's supervising this hill? I mean, we specifically allege that in paragraph 20, and it's alleged in other places too, but that prior to February 13th, 2011 and sometime during the winter of 2008 and 2009 – I'm not going to read it, it's a very long paragraph – but that paragraph says that they were notified that the park district, so the defendant in this case, was notified of an accident with an injury to a 7-year-old, and it states that this injury was – that this other minor was caused to strike the fence in approximately the same hand or similar manner and location as the minor plaintiff, James Day, which resulted in damage to the fence and personal injury to the child. So you did plead the park district? We did plead the park district. So that leads me to my next question, which – that's the 615 part. Now, the council indicated that there was a 619 motion that was fully briefed by you in response to his – I guess it would be his second motion regarding some other facts, some affidavits, some depositions that were presented, and one of those being that the park district actually didn't get notice. Well, I don't think that issue was ever decided by Judge Meyer, first of all. It wasn't decided, but we could decide it on that basis if we chose to affirm it on that basis, if it was fully briefed. I mean, if you had the opportunity to fully brief it and argue it. Well, again, my understanding is that Luke Herzog said he went into the park district offices and he complained about the fence and the hill system and that they did, in fact, get notice. Now, Judge Meyer, again, the order specifically states that Judge Meyer denied the 2619 motion without prejudice, and then when they filed it again and added open and obvious, I don't necessarily agree with plaintiff's counsel or defense counsel's characterization that this was solely at our urging that we not do any briefing. What happened was we told Judge Meyer, if they are going to raise these issues, we want to do additional discovery. And at that point, Judge Meyer, again, being familiar with the pleading, quite frankly, there was nothing new about these specific pleadings. I think Judge Meyer knew in his head that he was going to probably grant the 2615 motion, and so he did not feel there was a need to do additional discovery that would address issues such as open and obvious and issues as this, you know, any alleged notice to the actual park district. And, you know, I think in the Bucoleros case, which the court appropriately noted was summary judgment, that's what we're asking for at this point, to get to the next step, to allow us to do discovery, and then if they want to file their motion for summary judgment, we'll defend that. But they stated that the concrete post in Ward and the large ruts in Diver were both, quote, obvious and, quote, conditions, not necessarily dangerous in themselves, that the plaintiff would have avoided had they not been distracted. So this case recognizes, again, what we've said all along. Ordinary conditions can become dangerous. Ordinary conditions can become defective. And the last thing I'll say is the Winfrey court, which is a fence case, there was a hole in the fence, but, again, in that case, the complaint was dismissed, and the court stated, Plaintiff in the case at bar does not allege, for example, that defendant had received complaints about the condition of the fence or that defendant ignored the problem after inspecting the fence. Such facts would serve to indicate the defendant showed an utter indifference or a conscious disregard for the plaintiff's safety. As we've said many times, I believe that the case law establishes once they knew about this prior injury and did nothing, that does create, or at least it gets us past the pleading stage. Thank you. We would like to thank both counsel for their arguments in this case, and the case will be taken under advisement, and we will take short recess. Thank you, Your Honor.